UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SURE FIT HOME PRODUCTS, LLC et al.,
                            Plaintiffs,

              -against-

MAYTEX MILLS, INC.,
                            Defendant.
------------------------------------------------------------X

21 Civ. 2169 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

Plaintiffs Sure Fit Home Products, LLC, SF Home Décor, LLC (collectively, "Sure Fit"), Zahner Design Group, Ltd. ("ZDG"), and Hookless Systems of North America, Inc. ("HSNA") (collectively, "Plaintiffs") claim that Defendant Maytex Mills, Inc.'s shower curtains infringe their design patent and trade dress. Plaintiffs seek a preliminary injunction barring Defendant from selling its allegedly infringing products. For the reasons set forth below, the motion is denied.

**I.    BACKGROUND**

**A.  Patent History**

Plaintiffs and Defendant make shower curtains. On October 2, 2012, the United States Patent and Trademark Office ("USPTO") issued the patent asserted in this case, Design Patent No. 668,091 (the "D091 Patent"), to David Zahner, Plaintiff ZDG's owner.[1] That patent, which expires in 2026, claims a shower curtain with reinforcing rings containing a slit, as depicted below.

---

[1] Patent protection is available for a "new, original and ornamental design for an article of manufacture." 35 U.S.C. § 171(a). A patentable design "gives a peculiar or distinctive appearance to the manufacture, or article to which it may be applied, or to which it gives form." *Samsung Elecs. Co. v. Apple Inc.*, 137 S. Ct. 429, 432 (2016).



D091 Patent Figures 1-3

The D091 Patent followed issuance to Zahner of several utility patents, which, unlike design patents, cover functional and utilitarian features of inventions. As relevant to the present motion, on February 16, 1993, the USPTO issued Utility Patent Number 5,186,232, entitled "Accessory" (the "'232 Patent"). The '232 Patent claimed a sheet of material, such as a shower curtain, that could be installed on a rod while the rod was fixed in place. The '232 Patent accomplished this by placing pairs of holes near the edge of the sheet, with a horizontal slit between holes. Those slits allowed the rod to be passed through the holes without removing the rod from its mount. Each opening was surrounded by a reinforcing ring to (1) prevent tearing of the sheet and (2) improve movement of the sheet on the rod and improve the engagement of the holes with the rod. This invention is depicted below.



'232 Patent Figures 1 and 3

2

On December 17, 2002, the USPTO issued to Zahner Utility Patent Number 6,494,248, entitled "Suspended Materials Having External Slits" (the "'248 Patent"). The '248 Patent incorporated the invention of the '232 Patent but improved upon that patent by relocating the slits so that they ran from the edge of the holes to the edge of the sheet material, as depicted below.



'248 Patent Figure 6

As with the '232 Patent, this design allowed the sheet to be mounted without moving the rod. Both the '232 and '248 Patents expired on July 17, 2020.

### B. Trade Dress History

Trade dress is the "total image of a product and may include features such as size, shape, color or color combinations, texture, or graphics." *LeSportSac Inc. v. K mart Corp.*, 754 F.2d 71, 75 (2d Cir. 1985); *accord GeigTech E. Bay LLC v. Lutron Electronics Co.*, No. 18 Civ. 5290, 2018 WL 4360792, at *5 (S.D.N.Y. Sept. 5, 2018). Plaintiffs claim their trade dress (the "Asserted Trade Dress") comprises their:

> rights to the visual appearance of their shower curtain products, which provide the visual appearance of:
>
> a. a shower curtain wherein the curtain lacks any hooks protruding above the upper edge of the curtain, so that Plaintiffs' shower curtain provides the visual appearance of an essentially "neat" and "orderly" upper edge;

3

    b. and wherein the shower curtain has a row of rings along the upper portion of the shower curtain, those rings being attached to the material of the shower curtain such that the bottom surface of each ring (on one or both sides of the shower curtain) is essentially co planar with the material of the shower curtain, also providing an essentially "neat" and "orderly" appearance;

    c. wherein each ring includes a slit or gap in the ring;

    d. and wherein the shower curtain's rings or pairs of rings, and the associated slits or gaps, are each fixed in place on the shower curtain and provide an organized and symmetrical repeating visual pattern along the top width of the shower curtain.

Trade dress need not be registered with the USPTO to be valid. *See* 15 U.S.C. § 1125(a)(3). Plaintiffs identify no registration for the Asserted Trade Dress.

### C. The Parties' History

In July 2020, Defendant began selling a line of shower curtains under the label "Glacier Bay." Plaintiffs sell shower curtains under the label "Hookless." In March 2021, Plaintiffs filed their Complaint, alleging that Defendant's Glacier Bay products (the "Accused Products") infringe the D091 Patent, the Asserted Trade Dress, and Plaintiffs' EZ-UP trademark. The same day, Plaintiffs filed the present motion, seeking injunctive relief due to infringement of the D091 Patent and Asserted Trade Dress.

## II.    STANDARD

### A. Preliminary Injunctions For Patent Claims

Federal Circuit law governs a motion for preliminary injunction targeting patent infringement. *Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 525 (Fed. Cir. 2012); *accord Ever Victory Tech. Ltd. v. SAS Grp., Inc.*, No. 19 Civ. 486, 2019 WL 4291670, at *1 n.2 (S.D.N.Y. Sept. 11, 2019). A party seeking the "extraordinary relief" of a preliminary injunction must "establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer

irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Takeda Pharms. U.S.A., Inc. v. Mylan Pharms. Inc.*, 967 F.3d 1339, 1345, 1349 (Fed. Cir. 2020) (alterations in original, internal quotation marks omitted).  Although "[t]hese factors, taken individually, are not dispositive, Federal Circuit case law establishes that a movant cannot be granted a preliminary injunction unless it establishes both of the first two factors, i.e., likelihood of success on the merits and irreparable harm." *Ever Victory Tech.*, 2019 WL 4291670, at *1 (quoting *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001)).

To show a likelihood of success on the merits in a patent case, a plaintiff "must prove that success in establishing infringement is more likely than not." *Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1166 (Fed. Cir. 2014) (internal quotation marks omitted); *accord Ever Victory Tech*, 2019 WL 4291670, at *1.  To establish irreparable harm, a plaintiff must "articulate and adduce proof of actual or imminent harm which cannot otherwise be compensated by money damages" and may not rest on unsupported allegations that such harm is likely to occur.  *Takeda*, 967 F.3d at 1349-50.

### B.  Preliminary Injunctions For Trade Dress Claims

Second Circuit law governs a preliminary injunction motion targeting trade dress infringement.  *See Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 376 (2d Cir. 1997) (applying Second Circuit law to trade dress preliminary injunction motion); *accord Daily Harvest, Inc. v. Imperial Frozen Foods Op Co. LLC*, No. 18 Civ 05838, 2018 WL 3642633, at *2 (S.D.N.Y. Aug. 1, 2018).  To obtain a preliminary injunction that would change the status quo -- for example, by requiring Defendant to stop selling its competing shower curtains -- Plaintiffs must (1) show a "clear or substantial" likelihood of success on the merits; (2) make a "strong

5

showing" of irreparable harm; (3) show that the balance of equities tips in Plaintiffs' favor and (4) show that a preliminary injunction is in the public interest. *A.H. by & through Hester v. French*, 985 F.3d 165, 176 (2d Cir. 2021).

## III. DISCUSSION

### A. Likelihood of Success[2]

#### 1. Patent Claims

The patentee seeking a preliminary injunction must show it is more likely than not that it will prove infringement and withstand any challenges to the validity of the patent. *Tinnus Enterprises, LLC v. Telebrands Corp.*, 846 F.3d 1190, 1202 (Fed. Cir. 2017). An accused infringer can defeat this showing of likelihood of success by demonstrating a substantial question of infringement or validity. *Id.*

**a. Infringement.**

A design patent is infringed "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same." *Samsung Elecs. Co. v. Apple Inc.*, 137 S. Ct. 429, 432 (2016); *accord Artskills, Inc. v. Royal Consumer Prod., LLC*, No. 17 Civ. 1552, 2019 WL 1930751, at *6 (D. Conn. May 1, 2019). "In some instances, the claimed design and the accused design will be sufficiently distinct that it will be clear without more that

---

[2] The parties dispute whether certain declarations, affidavits and exhibits Plaintiffs submitted with their motion should be considered. Because (1) "the decision of whether to award preliminary injunctive relief is often based on 'procedures that are less formal and evidence that is less complete than in a trial on the merits,'" *Mullins v. City of New York*, 626 F.3d 47, 51-52 (2d Cir. 2010) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)); *accord 725 Eatery Corp. v. City of New York*, 408 F. Supp. 3d 424, 455 (S.D.N.Y. 2019), and (2) "courts routinely consider hearsay evidence in determining whether to grant preliminary injunctive relief, including affidavits, depositions, and sworn testimony," *Mullins*, 626 F.3d at 52; *accord 725 Eatery*, 408 F. Supp. 3d at 455, the Court has considered the full evidentiary record submitted by the parties.

the patentee has not met its burden of proving the two designs would appear substantially the same." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008) (internal quotation marks omitted); *accord Wine Enthusiast, Inc. v. Vinotemp International Corporation*, 317 F. Supp. 3d 795, 800-01 (S.D.N.Y. 2018). In other instances, "differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant with the [state of the art in the field]." *Egyptian Goddess*, 543 F.3d at 678.

Defendant has raised a substantial question as to whether it is more likely than not that an ordinary observer, applying the level of attention normally given to a purchase, would conclude that the design of the D091 Patent and the Accused Products are substantially the same. Plaintiffs rest their arguments on side-by-side pictures of the D091 Patent and the Accused Products, and the observation that both designs involve shower curtains containing embedded rings and slits. Beyond those high-level details, the resemblance ends. The below images show Figures 2 and 3 of the D091 Patent, depicting the front and back of the claimed invention, respectively.



D091 Patent Figures 2 and 3

When compared with the front and back of the Accused Products, below, several key differences are immediately apparent.



Front of Accused Product



Front of Accused Product                          Back of Accused Product

Comparing the front of the two products, it is apparent that the front of Defendant's rings has a rounded, beveled edge that differs from the flat rings in Plaintiffs' D091 Patent. Those rings extend far closer to the top edge of the sheet than those in the D091 Patent. The back of the two designs also differ significantly. Most obviously, the Accused Products have a small hook hanging from the back of each ring. The back of each ring in the Accused Products also has beveled inner and outer rims, unlike the D091 Patent. The Accused Products' ring backs also have a series of post holes on their surfaces. These differences are plainly apparent upon inspection. For that reason, Plaintiffs have not shown it is more likely than not that they will be

able to prove infringement under the ordinary observer test, and a substantial question as to infringement exists. Accordingly, Plaintiffs have not shown a likelihood of success on the merits.

In response, Plaintiffs cite *Gorham Co. v. White*, 81 U.S. 511, 526-27 (1871), which noted that the ordinary observer test can be met even with some degree of design variation. That observation is true, but beside the point, as the differences between the two designs are significant and obvious upon plain view. Because Plaintiffs have not shown a likelihood of success on the merits, this Opinion and Order does not address the parties' arguments on validity.

### 2. Trade Dress Claims

Plaintiffs have not made a "clear and substantial" showing that they are likely to succeed on their trade dress claims because the key features of the Asserted Trade Dress are likely dictated by functional, utilitarian aspects of Plaintiffs' products, and are thus ineligible for protection under the trademark statute.

Unregistered trade dress like the Asserted Trade Dress is protected under the Lanham Act if: (1) it provides a precise expression of the character and scope of what is claimed; (2) it is not functional and (3) the trade dress is distinctive -- it has acquired secondary meaning such that the allegedly infringing product is likely to be confused with the product for which protection is sought. *GeigTech*, 352 F. Supp. 3d at 275 (collecting cases). The parties do not dispute that the Asserted Trade Dress is adequately specified under prong (1), but dispute whether the Asserted Trade Dress is functional and distinctive under prongs (2) and (3). "If a plaintiff fails to prove that its purported product design trade dress is nonfunctional, there is no need for a court to analyze whether it has acquired secondary meaning." *Id.* (citing *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23 (2001)).

Because trade dress, like trademark law more generally, is intended to promote competition, it cannot extend to product features that are functional, and thus covered by patent law's time-limited monopoly on utilitarian inventions. *See id.* As the Second Circuit has explained, "[this] functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature." *Sulzer Mixpac AG v. A&N Trading Co.*, 988 F.3d 174, 181 (2d Cir. 2021) (quoting *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 164 (1995)). Accordingly, "[t]rade dress protection must subsist with the recognition that in many instances there is no prohibition against copying goods and products." *Id.* (quoting *TrafFix*, 532 U.S. at 29). The Supreme Court has "advised against overextension of trade dress, noting that 'product design almost invariably serves purposes other than source identification.'" *Id.* (quoting *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 213 (2000)).

In the Second Circuit, "a product feature is considered to be 'functional' in a utilitarian sense if it is (1) essential to the use or purpose of the article, or if it (2) affects the cost or quality of the article." *Id.* at 182 (internal quotation marks omitted). "Product features are essential when they are dictated by the functions to be performed by the article." *Id.* (internal quotation marks omitted). "A feature affects cost or quality when it permits the article to be manufactured at a lower cost or constitutes an improvement in the operation of the goods." *Id.* (internal quotation marks omitted). The Supreme Court has observed that a prior utility patent claiming the same feature that is central to an item of trade dress "has vital significance in resolving the trade dress claim," and "is strong evidence that the features therein claimed are functional." *TrafFix*, 532 U.S. at 29; *accord Rubik's Brand Ltd. v. Flambeau, Inc.*, No. 17 Civ. 6559, 2021 WL 363704, at *8 (S.D.N.Y. Jan. 31, 2021). Because the Asserted Trade Dress is not published

on the Federal Trademark Register, Plaintiffs bear the burden of showing its design elements are not functional. 15 U.S.C. § 1125(a)(3).

Plaintiffs provide two images of products allegedly embodying the Asserted Trade Dress.



Plaintiffs' Products Embodying the Asserted Trade Dress

Plaintiff's written description of the Asserted Trade Dress identifies four specific features: (1) a shower curtain lacking hooks above the upper edge, providing a neat and orderly appearance; (2) a row of rings or pairs of rings along the upper edge of the curtain that are attached to the curtain; (3) a slit or gap in each ring and (4) rings or pairs of rings, and associated slits or gaps, that provide an organized and symmetrical repeating visual pattern.

Plaintiffs have not met their burden of making a "clear and substantial" showing that these features are nonfunctional, as they must to obtain a preliminary injunction. Instead, these features appear to be amply influenced by engineering necessity. Plaintiffs' '232 Patent touts the functional benefits of a sheet containing a set of holes or pairs of holes along its upper edge, or "end portion," which are organized in a symmetrical manner or regularly spaced so as to "improve the support of the [curtain] accessory along its length," and the inclusion of an "open path between two openings . . . accomplished by respective cuts through the respective pairs of rings and the sheet" that enables the key advance set forth in the patent: "a simple and effective accessory for attaching a curtain or the like to a rod while maintaining an aesthetic appearance"

by "easily attaching a curtain or the like to a rod without the necessity of threading the rod." A side-by-side comparison shows the '232 Patent's illustration of the invention's preferred embodiment is largely identical to one of Plaintiffs' examples of the Asserted Trade Dress.



'232 Patent Figures 1 and 3



Asserted Trade Dress

Similarly, Plaintiffs' '248 Patent repeatedly describes the benefits of a hanging sheet containing fastener elements such as rings with "the slit extending through the fastener" in order to "facilitate[] the attachment of the material to [a] rod without the need to remove the rod from its supports" which "may be used to provide certain patterns of flow of a curtain (e.g. the way it folds, hangs, etc)" or arranged in a regular pattern to "eliminate the problem of possible drooping" caused by "a large spacing between the rings." A side-by-side comparison of the '248 Patent's preferred embodiment with one of Plaintiffs' examples of the Asserted Trade Dress shows that the two are largely identical.



'248 Patent Figure 6     Asserted Trade Dress

Both the '232 and '248 Patent repeatedly identify the key point of novelty in their claimed inventions as the inclusion of a row of rings, each containing a slit that allows a curtain to be installed and supported on a rod without detaching that rod, and without the need for external hooks or clips that would present a disorderly or un-aesthetic appearance. Because the Asserted Trade Dress claims those features, Plaintiffs have not met their burden of showing non-functionality. *Sulzer Mixpac*, 988 F.3d at 181. Plaintiffs thus cannot show a "clear and substantial" likelihood of success on the merits, and it is not necessary to address the parties' arguments regarding the Asserted Trade Dress's distinctiveness.[3]

---

[3] Some of the Plaintiffs have brought claims under the Asserted Trade Dress in a separate action in this District, *Focus Products Group International, LLC v. Kartri Sales Co., Inc.*, No. 15 Civ. 10154 (S.D.N.Y.). The court granted the defendants summary judgment on the trade dress claim, holding that the Asserted Trade Dress was generic and had not acquired secondary meaning. *See Kartri*, 454 F. Supp. 3d 229, 250, 253 (S.D.N.Y. 2020), *reconsideration denied*, 2020 WL 2115344 (May 3, 2020). The court did not reach the issue of functionality. *See Kartri*, 454 F. Supp. 3d 229, 250, 253 (S.D.N.Y. 2020), *reconsideration denied*, 2020 WL 2115344 (May 3, 2020). On a second motion for reconsideration, the court found for Plaintiffs on the functionality issue because the defendant had failed to put forth evidence to put the fact in issue, but denied Plaintiffs summary judgment on the trade dress claim, finding that the secondary meaning element presented a question of fact for the jury. *Kartri*, 2021 WL 22630, at *3-*5 (S.D.N.Y. Jan. 4, 2021). The case is distinguishable because the court in *Kartri* was bound by the evidentiary record before it. To the extent that the *Kartri* analysis is otherwise inconsistent with this Opinion and Order, this court respectfully disagrees.

In the face of the Supreme Court's observation that a prior utility patent "is strong evidence that the features therein claimed are functional," *TrafFix*, 532 U.S. at 29, Plaintiffs first argue that the Asserted Trade Dress cannot be functional because the '232 and '248 Patents provide alternative embodiments of the claimed inventions that do not resemble the Asserted Trade Dress. Plaintiffs rely on a non-binding Second Circuit decision, *Cartier, Inc. v. Sardell Jewelry, Inc.*, which declined to find functionality because of "many alternative designs that could perform the same function." 294 F. App'x 615, 621 (2d Cir. 2008) (summary order). Plaintiffs' reliance on *Cartier* is unpersuasive. Unlike that case, this case involves Plaintiffs' own expired utility patents that directly claimed the specific features integral to the Asserted Trade Dress. In those circumstances, courts have declined to "engage . . . in speculation about other design possibilities . . . which might serve the same purpose," because "the functionality of the [] design means that competitors need not explore whether other [configurations] might be used . . . it is the reason the device works. Other designs need not be attempted." *TrafFix*, 532 U.S. at 33-34. The same reasoning applies here. Plaintiffs' use of regularly spaced rings and associated slits at the top of a sheet of material serve the functional purpose of enabling the sheet to be hung on a fixed rod without using unsightly clips or hooks. Whether another design serves the same purpose does not render Plaintiffs' engineering-driven ring-and-slit design non-functional. Finding otherwise would create the exact issue the Supreme Court has repeatedly cautioned against: overextending patent law's monopoly on useful product features through the instrument of trade dress. *See TrafFix*, 532 U.S. at 29; *Qualitex*, 514 U.S. at 164-65.

Plaintiffs also note in passing that the Asserted Trade Dress covers aesthetic aspects of their products. The Supreme Court has noted that where a party asserts trade dress on a product covered by a utility patent "to protect arbitrary, incidental, or ornamental aspects of features of

[the] product found in the patent claims," then "a different result might obtain" as to functionality. *TrafFix*, 532 U.S. at 34; *accord Schutte Bagclosures Inc. v. Kwik Lok Corp.*, 193 F. Supp. 3d 245, 261-62 (S.D.N.Y. 2016), *aff'd*, 699 F. App'x 93 (2d Cir. 2017) (summary order). That principle does not apply here. The Asserted Trade Dress claims to provide aesthetic features to create a "neat and orderly appearance" -- by (1) eliminating the need for hooks above the curtain, (2) providing a row of rings along the upper portion of the curtain, arranged in a manner co-planar with the curtain and (3) providing that the rings and slits should be arranged in "an organized and symmetrical repeating visual pattern." To the extent Plaintiffs claim these portions of the Asserted Trade Dress constitute arbitrary, incidental or ornamental features of the '232 and '248 Patents, the argument is unpersuasive. The patents themselves explain how these features are driven by their functionality.

The '232 Patent notes that its design "overcome[s] the difficulty in the prior art of easily attaching a curtain or the like to a rod *without . . . the use of support clips while maintaining an attractive appearance to the mounted curtain*" (emphasis added). The '232 Patent also explains the functional benefits of the Asserted Trade Dress's claim to regularly-spaced rings oriented co-planar to the sheet, stating that (1) a "plurality of pairs of openings . . . *improve the support of the [sheet] along its length*" (emphasis added), (2) "a spacing of 10 to 20 cm. can be used for both" and (3) that the rings "reinforce the opening [in the sheet]" to prevent tearing and ripping while "improv[ing] the movement of the mounted sheet on the rod as well as improv[ing] the engagement of the holes with the rod."

The '248 Patent states that its design (1) "allows a curtain . . . to be attached to a mounting rod *without the need for hanging support hooks*" (emphasis added), (2) that the slits may be arranged "to provide certain patterns of flow of a curtain (e.g. the way it folds, hangs,

15

etc)" and to ensure that the curtain hangs concave to the wall, which contains water more effectively in the shower while blocking more light and (3) that the use of spaced rings allows "the width and the spacing of the flow of the curtain to be adjusted more readily." These disclosures demonstrate that the Asserted Trade Dress's disclosure of rings and slits co-planar to the curtain surface, whether arranged in an attractive, symmetric or repeated manner, is driven by functional considerations described in the '232 and '248 Patents. Accordingly, those features of the Asserted Trade Dress are not merely arbitrary, incidental or ornamental.

### B. Irreparable Harm

Plaintiffs have not made an adequate showing of irreparable harm. "Irreparable harm is injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *New York v. United States Dep't of Homeland Sec.*, 969 F.3d 42, 86 (2d Cir. 2020); *see also Takeda*, 967 F.3d at 1349.

Plaintiffs claim that irreparable harm arises from the fact that Plaintiffs and Defendant are competing for the same retailers and customers. Plaintiffs identify no reason why damages would be insufficient to compensate them for any lost business or customers and instead quantify a portion of lost revenue they attribute to Defendant's competition. *See, e.g.*, *Tait v. Accenture PLC*, No. 18 Civ. 10847, 2019 WL 2473837, at *3 (S.D.N.Y. June 13, 2019) (finding no irreparable harm where plaintiff claimed financial harm and lost business opportunities, and collecting cases where plaintiffs showed irreparable harm, which involved "a qualitatively different harm from monetary loss standing alone").

Plaintiffs also: (1) identify a potential loss of business from their top retail customer to Defendant's allegedly-infringing product lines; (2) speculate that the retail customer will launch private lines using Defendant's products that further harm Plaintiffs' market position; (3) state

16

that Plaintiffs' business goodwill might be eroded by confusion with Defendant's products; (4) claim Plaintiffs could lose potential follow-on business opportunities because their shower curtain products act as entry points for retailers and (5) speculate that Plaintiffs' entire business is at risk from Defendant's alleged infringement.[4]  Such speculative issues are not the type of actual and imminent harm that justify the extraordinary remedy of a preliminary injunction.  *See Takeda*, 967 F.3d at 1349-50; *New York v. United States Dep't of Homeland Sec.*, 969 F.3d at 86.  Plaintiffs have not shown they will suffer irreparable harm absent a preliminary injunction.  For that reason, this Opinion and Order does not address the parties' arguments as to whether Plaintiffs have established a "sufficiently strong causal nexus" between their claimed harms and Defendant's alleged patent infringement.  *Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1378 (Fed. Cir. 2020).

### C. Balance of Equities and Public Interest

In balancing the equities, courts must weigh the harm to the movant if the injunction is not granted against the harm to the non-moving party if the injunction is granted.  *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 68 (2d Cir. 1999); *accord In re Tronox Inc.*, No. 14 Civ. 5495, 2014 WL 5825308, at *9 (S.D.N.Y. Nov. 10, 2014).  The equities here tip slightly in favor of Plaintiffs.  As competitors, both parties will lose some degree of business and goodwill if an injunction issues.  However, Plaintiffs identify their shower curtain line of products as central to their

---

[4] Plaintiffs cite cases stating that loss of an entire business can be an irreparable harm.  Those cases involved an imminent risk of loss not present here.  Plaintiffs state that they have lost (1) several hundred thousand dollars in revenue from one of their major retail customers, which they speculate is due to competition from Defendant's competing products and (2) business to Defendant from their largest retail customer in the field of slipcovers.  From those claims, Plaintiffs extrapolate that the customer's shower curtain business "could easily be next" and thus their entire business is at stake.  These claims are too speculative to sustain a showing of irreparable harm at the preliminary injunction stage.

business, whereas Defendant does not dispute that the Accused Products constitute a small portion of its business.

The public interest would not be served by an injunction. Enjoining sales of the Accused Products would be premature given that (1) the Accused Products appear plainly different from the D091 Patent and (2) functional considerations likely underlie the Asserted Trade Dress, and so an injunction would potentially extend the utilitarian protection of the expired '232 and '248 Patents beyond their lifespan.

## IV. CONCLUSION

All of the preliminary injunction factors, except the balance of equities, weigh against a preliminary injunction. Accordingly, Plaintiffs' motion for a preliminary injunction is denied. The Clerk of Court is respectfully directed to close the motion at Docket No. 24.

Dated: May 26, 2021
      New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**