UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                             :
SURE FIT HOME PRODUCTS, LLC et al.,      :
                          Plaintiffs,  :
                                         :            21 Civ. 2169 (LGS)
                -against-                    :
                                         :            <u>OPINION & ORDER</u>
MAYTEX MILLS, INC.,                           :
                               Defendant.  :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

Plaintiffs Sure Fit Home Products, LLC, SF Home Décor, LLC, Zahner Design Group, Ltd., and Hookless Systems of North America, Inc. (collectively, "Plaintiffs") allege that Defendant Maytex Mills, Inc. ("Maytex") infringes U.S. Design Patent No. 668,091, titled "Shower Curtain" (the "D091 Patent"). The parties have presented their proposed constructions of the D091 Patent. For the reasons set forth below, the D091 Patent is construed as follows:

> The D091 Patent claims a shower curtain which incorporates the ornamental design shown in the drawings in solid lines. The broken lines in the drawings represent unclaimed subject matter. When the shower curtain is viewed from the front, the D091 Patent claims the vertical orientation of the slits running through the reinforcing rings to the top of the curtain. The D091 Patent does not claim the slits when viewed from behind. The jagged lines at the edge of the drawings show that the curtain and rings extend outward, and the jagged lines at the bottom of the drawings show that the curtain extends downward.

**I.    BACKGROUND**

Familiarity with the background of this matter is assumed from the prior opinion issued in this case, *Sure Fit Home Prod., LLC v. Maytex Mills, Inc.*, No. 21 Civ. 2169, 2021 WL 2134863 (S.D.N.Y. May 26, 2021) ("*Sure Fit I*"), but a brief summary is provided here.

Plaintiffs and Defendant make shower curtains. The D091 Patent claims "the ornamental design for a shower curtain, as shown and described" in the below images:



The D091 Patent's specification states that "[t]he broken lines in the drawing[s] depict environmental subject matter only and form no part of the claimed design."

The D091 Patent claims priority to U.S. Patent Number 6,494,248 (the "'248 Patent"), which itself incorporated by reference U.S. Patent Number 5,186,232 (the "'232 Patent"). As outlined in the Court's previous opinion, the key point of novelty in the '232 and '248 Patents was "the inclusion of a row of rings [on a shower curtain], each containing a slit that allows a curtain to be installed and supported on a rod without detaching that rod, and without the need

for external hooks or clips." *Sure Fit I,* 2021 WL 2134863 at *5. The '232 Patent depicted the slits in a horizontal orientation that run between the holes and reinforcing rings for the curtain rod, while the '248 Patent depicted those slits in a vertical orientation, running from the edges of the curtain rod holes, through the reinforcing rings and up to the top edge of the sheet material.



'232 Patent Figures 1 and 3



'248 Patent Figure 6

## II.   STANDARD

### A. Design Patents

Patent protection is available for a "new, original and ornamental design for an article of manufacture." 35 U.S.C. § 171(a). A patentable design "gives a peculiar or distinctive appearance to the manufacture, or article to which it may be applied, or to which it gives form," *Samsung Elecs.*

*Co. v. Apple Inc.*, 137 S. Ct. 429, 432 (2016) (internal quotation marks omitted), so a design patent "protects the non-functional aspects of an ornamental design as seen as a whole and as shown in the patent," *Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1370 (Fed. Cir. 2006). A patented design "must be represented by a drawing" and "must contain a sufficient number of views to constitute a complete disclosure of the appearance of the design." 37 C.F.R. § 1.152.

### B. Claim Construction

"[A] district court's duty at the claim construction stage is . . . to resolve a dispute about claim scope that has been raised by the parties." *Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1319 (Fed. Cir. 2016). The same principles that apply to claim construction for utility patents also apply to design patents. *See* 35 U.S.C. § 171(b) ("The provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided."); *Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*, 930 F.3d 1314, 1322 (Fed. Cir. 2019). During claim construction, the court looks "first to intrinsic evidence, and then, if necessary, to the extrinsic evidence." *TEK Glob., S.R.L. v. Sealant Sys. Int'l, Inc.*, 920 F.3d 777, 785 (Fed. Cir. 2019) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317-19 (Fed. Cir. 2005)). The intrinsic evidence comprises the claims, the specification and the prosecution history. Secondary to the intrinsic evidence is the extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317.

The Federal Circuit has instructed district courts that "design patents typically are claimed as shown in drawings." *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1342 (Fed. Cir. 2020); *accord Curver Lux., SARL v. Home Expressions Inc.*, 938 F.3d 1334, 1339 (Fed. Cir. 2019) ("[t]o define the scope of a design patent, we have traditionally focused on the figures

4

illustrated in the patent") (collecting cases). In evaluating design patent drawings, courts may also credit conventions in design patent drafting. *See Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 680 (Fed. Cir. 2008). Two such conventions are (1) the use of broken lines to signify non-claimed subject matter, as outlined in Section 1503.2 of United States Patent and Trademark Office's ("USPTO's") Manual of Patent Examining Procedure ("MPEP") and (2) the use of jagged lines to signal that an item extends or continues past the depicted extent of a drawing, as outlined in the USPTO's Design Patent Guide.[1]

The Federal Circuit has also instructed that a district court construing design patent claims should "distinguish between those features of the claimed design that are ornamental and those that are purely functional," *Lanard Toys*, 958 F.3d at 1342 (internal quotation marks and alterations omitted), and has "often blessed claim constructions, for example, where the court helped the fact finder distinguish between those features of the claimed design that are ornamental and those that are purely functional," *Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1320 (Fed. Cir. 2016) (internal quotations and alterations omitted). "[A] design patent is invalid if its overall appearance is dictated by its function. But as long as the design is not primarily functional, the design claim is not invalid, even if certain elements have functional purposes. That is because a design patent's claim protects an article of manufacture, which 'necessarily serves a utilitarian purpose.'" *Id.* (internal quotations and citations omitted). So, where a design contains functional and non-functional elements, the "scope of the claim must be

---

[1] While USPTO references like the MPEP are not legally binding, courts may consider them as instructive interpretations of patent law. *See Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1295 (Fed. Cir. 2017). The MPEP and Design Guide are instructive as to design patent drafting practices.

construed in order to identify the non-functional aspects of the design as shown in the patent." *Id.* (internal quotation marks omitted).

### III. DISCUSSION

#### A. Broken Lines

The D091 Patent states that "the broken lines in the drawing[s] depict environmental subject matter only and form no part of the claimed design." Figure 1, a perspective view of the design, depicts the shower curtain rod with broken lines. Figure 2, a front view of the design, likewise depicts the shower curtain rod with broken lines. Figure 3, a back view of the design, uses broken lines to depict both the shower curtain and the slits extending through the top of the shower curtain and reinforcing rings. Figure 4, a right side view of the design, depicts the shower curtain rod with broken lines. Figures 5 and 6 are top and bottom views of the design and depict the shower curtain rod with broken lines. Figure 7, a front view of the design "when not in use on a shower curtain rod," contains no broken lines.

It is plain from the D091 Patent's drawings, as well as its written description, that the shower curtain rod is not a claimed feature of the design. *See, e.g.*, *In re Owens*, 710 F.3d 1362, 1367 n.1 (Fed. Cir. 2013) ("it is appropriate to disclaim certain design elements using broken lines, provided the application makes clear what has been claimed"). Nor do the parties dispute that (1) the frontal portions of the slits, which are depicted with a solid line in Figures 1, 2 and 7 are part of the claimed design and (2) that the back portions of the slits, which are depicted with a broken line in Figure 3, are not part of the claimed design. The proper construction of the drawings excludes the elements shown depicted with broken lines -- the shower curtain and the backs of the slits.

Defendant claims the frontal portions of the slits are purely functional, and that the D091 Patent should be construed as though those slits were depicted with broken lines. This argument is unpersuasive. In assessing functionality during design patent claim construction, courts must consider

> whether the protected design represents the best design; whether alternative designs would adversely affect the utility of the specified article; whether there are any concomitant utility patents; whether the advertising touts particular features of the design as having specific utility; and whether there are any elements in the design or an overall appearance clearly not dictated by function.

*Sport Dimension*, 820 F.3d at 1322 (internal quotation marks omitted). Two of these factors suggest that the slits play a functional role: (1) the '232 and '248 Patents tout the benefits of using a slit to thread a shower curtain onto a rod without first disengaging the rod from its holder and (2) one of Plaintiff's advertisements depicts vertical slits, which it notes allow the shower curtain to be "install[ed] in seconds without removing the rod." Certain factors suggest that the vertical slits also play an ornamental role: (1) the '232 Patent discloses an alternative design with horizontal slits that likewise permit the curtain to be threaded onto an installed rod, as do Defendant's products and (2) the majority of Plaintiffs' advertisements cited by Defendant involve horizontal, rather than vertical slits, suggesting that a vertical slit is not the "best design" and that alternative designs would not "adversely affect the utility of the specified article." *Sport Dimension*, 820 F.3d at 1322. Considering these factors, the use of a vertical slit, while serving a functional purpose, is not "purely functional." *Lanard Toys*, 958 F.3d at 1342; *see also Sport Dimension*, 820 F.3d at 1320 (collecting cases where claims were construed to emphasize to the factfinder the ornamental features of functional elements); *cf.*, *Sure Fit I*, 2021 WL 2134863, at *4 (denying preliminary injunction in part because Plaintiff had not demonstrated sufficient likelihood of success in showing that their asserted trade dress was non-functional based on law

7

and analysis relevant to trade dress claims and not to patent claims). Consistent with Federal Circuit authority, the proper construction of the drawings must note that the D091 Patent claims the vertical orientation of the slits when viewed from the front, rather than the use of a slit generally. *See Sport Dimension*, 820 F.3d at 1322-23; *Ethicon Endo–Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1330-31 (Fed. Cir. 2015); *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293-94 (Fed. Cir. 2010); *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405-06 (Fed. Cir. 1997).

### B. Jagged Lines

Figures 1-4 and 7 of the D091 Patent contain a jagged line at the bottom and outward edges of the shower curtain. Those jagged edges, like the rest of the curtain, are depicted with solid lines, indicating they are a portion of the claimed design. Per the USPTO's Design Patent Guide, as well as various drafting manuals and textbooks contemporary to the D091 Patent's application, such lines indicate that the shower curtain has the same shape and pattern of rings through its entire length and extends outward and down to its full extent.

In response, Defendant argues that the D091 Patent claims a "Shower Curtain," rather than a portion of a shower curtain, and thus that a person of ordinary skill in the art ("POSITA") would understand the claimed design to be a shower curtain of the approximate dimensions shown in the drawings, with jagged zig-zags in its right and bottom edges. Defendant also notes that one of Plaintiffs' other design patents used broken lines for the edge of a shower curtain. These arguments are unpersuasive. First, the jagged lines are consistent with depiction of an entire shower curtain, as they signal that the curtain edge and rings extend rightward, and that the curtain edge extends downward. The intrinsic and extrinsic evidence shows that a POSITA would understand the jagged lines to have such meaning, and thus that the D091 Patent

constitutes a complete disclosure of the appearance of the design. Second, construing the D091 Patent as Defendant urges would lead to an absurd result -- a shower curtain containing two rings, each approximately two-thirds the height of the curtain itself, with zig-zag detailing at the bottom and right edges. Mindful that the Federal Circuit has rejected such strained interpretations in favor of the "common-sense meaning of [] claim limitation[s]," *Lisle Corp. v. A.J. Mfg. Co.*, 398 F.3d 1306, 1314 (Fed. Cir. 2005), the jagged lines are construed to indicate that the shower curtain and ring design extends rightward, and the shower curtain extends downward.[2]

## IV. CONCLUSION

For the reasons set forth above, the D091 Patent is construed as follows:

The D091 Patent claims a shower curtain which incorporates the ornamental design shown in the drawings in solid lines. The broken lines in the drawings represent unclaimed subject matter. When the shower curtain is viewed from the front, the D091 Patent claims the vertical orientation of the slits running through the reinforcing rings to the top of the curtain. The D091 Patent does not claim the slits when viewed from behind. The jagged lines at the edge and bottom of the drawings show that the curtain and rings extend outward, and that the curtain extends downward.

Dated: October 14, 2021
New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

---

[2] Defendant also claims that the D091 patent is not entitled to its claimed priority date, arguing that the '248 Patent to which it claims priority only shows top and front views of the ring-slit design -- but not a back view of the ring-slit design -- and thus a POSITA could not conclude "that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). From that claim, Defendant extrapolates that the '248 Patent (along with several other patents) constitutes prior art invalidating the D091 Patent. This argument goes to the validity of the D091 Patent rather than claim construction and is denied without prejudice to renewal in any motion for summary judgment.