UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SURE FIT HOME PRODUCTS, LLC, SF HOME
DÉCOR, LLC, ZAHNER DESIGN GROUP,
LTD., AND HOOKLESS SYSTEMS OF
NORTH AMERICA, INC.,

             Plaintiffs,

v.

MAYTEX MILLS, INC.

             Defendant.

Civil Action No.:

1:21-cv-02169 (LGS) (GWG)

(JURY TRIAL DEMANDED)

## FIRST AMENDED COMPLAINT

Plaintiffs Sure Fit Home Products, LLC and SF Home Décor, LLC (collectively, "Sure Fit"), Zahner Design Group, Ltd. ("ZDG"), and Hookless Systems of North America, Inc. ("HSNA") (with Sure Fit, HSNA, and ZDG being collectively referred to as "Plaintiffs") by their attorneys, hereby complain of Defendant Maytex Mills, Inc. ("Maytex"), as set forth below.

## JURISDICTION AND VENUE

1.     This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §101 *et seq.*, and for trademark infringement and unfair competition under federal law and the laws of the State of New York.  This Court has jurisdiction over the federal claims of this action pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1338, and has jurisdiction over the state claims under 28 U.S.C. §1338(b) and further pursuant to its supplemental jurisdiction under 28 U.S.C. §1367.  The state claims

asserted herein are so related to the federal claims as to form part of the same case or controversy.

2.     This action arises from Defendant's use, sale, offer for sale, and/or importing of products, and conduct of activities, that infringe Plaintiffs' design patents, trademark, and trade dress.

3.     This Court has personal jurisdiction over Defendant in that Defendant has engaged in acts constituting doing business in the State of New York, including in this judicial district, and has have intentionally directed its tortious activities toward the State of New York, including this judicial district. Defendant has committed acts of intellectual property infringement in New York, including this judicial district, and has delivered the accused products into the stream of commerce with the expectation that they will be purchased by consumers in the State of New York, including this judicial district. Defendant has sold or offered for sale products, including products that are the subject of this First Amended Complaint ("FAC"), to consumers in the State of New York, including this judicial district.

4.     With respect to the patent claims, venue is proper in this district under 28 U.S.C. § 1400(b) in that Defendant has committed acts of infringement and has a regular and established place of business in this district.

5.     With respect to the non-patent claims, venue is also proper in this district in that Defendant is a corporation subject to personal jurisdiction within this judicial district, and deemed to reside in this district, pursuant to 28 U.S.C. §§ 1391(b) - (d), and in that Defendant has committed acts of infringement in this district.

## THE PARTIES

6.      Plaintiff Zahner Design Group, Ltd. is a corporation organized and existing under the laws of the State of New York and having a principal place of business at 179 Christopher Street, New York, NY 10014.  ZDG is the owner of the design patent and other intellectual property rights that are the subject of this FAC.

7.      Plaintiff Hookless Systems of North America, Inc. is a corporation organized and existing under the laws of the State of New York having a principal place of business at 179 Christopher Street, New York, NY 10014.  HSNA has been licensed ZDG's intellectual property that is the subject of this FAC.

8.      Focus Products Group International, LLC ("Focus") was the prior name of a corporation organized and existing under the laws of the State of Illinois, and having a principal place of business at 300 Knightsbridge Parkway, Suite 500, Lincolnshire, IL 60069.

9.      Focus is the successor-in-interest to Arcs and Angles, Inc. and Arcs and Angles, LLC (collectively "Arcs and Angles").  ZDG licensed intellectual property rights to HSNA which HSNA licensed to Arcs and Angles, which rights were then acquired by Focus.

10.      Plaintiff SF Home Décor, LLC ("SF Home Décor") is a Delaware Limited Liability Company having a principal place of business at 8000 Quarry Road, Alburtis, Pennsylvania 18011.

11.      Previously, Focus was licensed HSNA's intellectual property for shower curtains, as noted in paragraph 9 above.

3

12.     Subsequent thereto, Focus underwent a corporate name change to Sure Fit Home Décor, LLC.

13.     Sure Fit Home Décor, LLC (formerly known as Focus) subsequently sold to Plaintiff SF Home Décor LLC all of the intellectual property assets of Focus which are the subject of this suit.

14.     Accordingly, SF Home Décor LLC currently holds, and is the successor-in-interest to, all intellectual property rights relating to this suit that were previously held by Focus.

15.     Plaintiff Sure Fit Home Products, LLC ("Sure Fit Home Products") is a Delaware Limited Liability Company having a principal place of business at 8000 Quarry Road, Alburtis, Pennsylvania 18011.

16.     SF Home Décor LLC is the parent company of Sure Fit Home Products, LLC.  (SF Home Décor, LLC and Sure Fit Home Products, LLC  are collectively referred to herein as "Sure Fit"; with Sure Fit, HSNA, and ZDG being collectively referred to herein as "Plaintiffs").

17.      Unless otherwise stated, references herein to Plaintiffs' intellectual property rights are references to intellectual property rights owned by Plaintiff ZDG, with those rights having been licensed by ZDG to HSNA, and by HSNA to Focus (now Sure Fit).  In addition, rights that were accrued by Focus have in some cases been previously further sublicensed by Focus with ZDG's consent. By the term "Plaintiffs' patent rights," or "Plaintiffs' trademark rights," or "Plaintiffs' trade dress rights," or similar such phrases herein, Plaintiffs refer to their ownership of valid, protectable, such rights, as set

4

forth in further detail below.  Likewise, the term "trademark rights" includes within its scope trade dress.

18.     Defendant Maytex is a corporation organized and existing under the laws of the State of Delaware having a principal place of business at 261 5th Avenue Suite 1701, 17th Floor, and 18th Floor, New York, NY 10016.  Upon information and belief, Maytex manufactures and distributes home accessories, including shower curtains, for sale in the United States.

**FACTS**

**PLAINTIFFS' DESIGN PATENTS**

19.     David Zahner of ZDG is the inventor of new technology and designs, including new inventions relating to shower curtains.

20.     Plaintiffs' unique and innovative shower curtains are well known throughout the United States and foreign countries as a result of the popular products that Plaintiffs have designed, introduced, and commercialized in interstate and international commerce.

21.     On October 2, 2012, United States Design Patent No. D668,091 entitled "Shower Curtain" was duly and lawfully issued to ZDG for Mr. Zahner's inventions by the United States Patent and Trademark Office ("the '091 patent").  A copy of the '091 patent is attached as Exhibit 1 hereto.

22.     On December 7, 2021, United States Design Patent No. D937,607 entitled "Shower Curtain" was duly and lawfully issued to ZDG for Mr. Zahner's inventions by the United States Patent and Trademark Office ("the '607 patent").  A copy of the '607

patent is attached as Exhibit 2 hereto.  The '091 patent and the '607 patent are

collectively referred to herein as "Plaintiffs' Design Patents."

23.     Pursuant to 35 U.S.C. §282, Plaintiffs' Design Patents have a presumption

of validity as a matter of law.

24.     Plaintiff ZDG's aforementioned intellectual property has been exclusively

licensed to HSNA, who has exclusively licensed that intellectual property to Focus (now

Sure Fit) for use on shower curtains.

25.     Plaintiffs invested significant time, funds, and effort into their products.

26.     As a result of Plaintiffs' efforts and their promotional, advertising, and

marketing activities, Plaintiffs' product designs have become widely known throughout

the United States and worldwide.

27.     Plaintiffs' intellectual property and their associated goodwill directed to

their shower curtains are all valuable assets of Plaintiffs.

## DEFENDANT'S INFRINGEMENT OF
## PLAINTIFFS' DESIGN PATENTS

28.     Defendant Maytex is manufacturing, offering for sale, selling, using,

and/or importing products infringing the patented designs of the '091 patent and the '607

patent.

29.     For example, Defendant Maytex is selling the Accused Products to Home

Depot.

30.     Defendant's accused products include their "Ez-Up" and "InstaCurtain"

shower curtains.

31.     Images of comparisons of Maytex's Accused Products to the patented design of the '091 patent are attached as Exhibits 3 and 4.

32.     Images of comparisons of Maytex's Accused Products to the patented design of the '607 patent are attached as Exhibits 5 and 6.

33.     In the eye of an ordinary observer, giving such attention as a purchaser usually gives, the design of Defendant's Accused Products and Plaintiffs' patented designs are substantially the same.

34.     A purchaser of shower curtains would consider the design of Maytex's Accused Products and Plaintiffs' patented designs to be substantially the same.

35.     An ordinary purchaser of shower curtains would see the design of Defendant's Accused Products and the patented designs of the '091 Patent and the '607 patents to be making the same design impressions, or to be the same designs.

36.     An ordinary observer would view the two designs, in the context of the prior art, and with the attention as that particular observer would have as a purchaser, to be the same.

37.     In the eye of the ordinary observer, giving such attention as a purchaser usually gives, the design of the Accused Products and the patented designs are substantially the same, with the resemblance being such as to deceive such an observer, inducing him to purchase one supposing it to be the other.

38.     In fact, the front of Defendant's Accused Products is identical or virtually identical to Plaintiffs' patented designs.

39.     Defendant's accused design infringes Plaintiffs' design patent rights.

## DEFENDANT'S INFRINGEMENT OF
## PLAINTIFFS' TRADEMARK RIGHTS

40.    In addition to its patents, Plaintiff owns various trademark rights to its products.

41.    Plaintiff ZDG owns trademark rights to the mark EZ ON®, including U.S. Trademark Registration No. 5,296,144 registered on September 26, 2017 ("the '144 Registration").  A copy of the '144 Registration is attached as Exhibit 7.

42.    ZDG is the registered owner of the '144 Registration, as recorded in the United States Patent and Trademark Office records, by virtue of an assignment dated September 29, 2021 from Carnation Home Fashions, Inc. ("Carnation") to ZDG.

43.    This assignment was executed by Carnation pursuant to its obligation under a license agreement entered into by the parties on February 1, 2012 ("the 2012 License Agreement").

44.    As per the 2012 License Agreement, Carnation was obligated to assign, and has now assigned, all intellectual property rights in the EZ ON '144 Registration to ZDG (among other rights).

45.    Plaintiffs' EZ ON® mark has been used on shower curtains sold continuously and exclusively in interstate commerce throughout the entire United States at a minimum through Carnation (who was granted a sublicense by Plaintiffs), and through Plaintiffs' own sales.  Plaintiffs, in the 2012 License Agreement, granted Carnation an exclusive sublicense in connection with the sale of a particular design falling within the scope of Plaintiffs' trade dress, which particular design has been sold by Carnation under the EZ ON® trademark.  Those sales of product, including use of the

associated product design and associated trademark, legally, and by the terms of the sublicense and assignment, have accrued trademark and trade dress rights to the Plaintiffs.

46.     ZDG's trademark rights to the EZ ON® mark are licensed by ZDG to its affiliate HSNA, who, in turn, has licensed those rights to Focus (which rights are now owned by SF Home Décor LLC).

47.     Plaintiffs' EZ ON® trademark is distinctive for shower curtain products, including, Plaintiffs' products for which it owns trade dress rights, and has accrued secondary meaning.

48.     Defendant uses the mark "EZ-UP" on some of the accused shower curtain products.  An example is shown in Exhibit 8.

49.     Carnation's use of the EZ ON® trademark on shower curtain products commenced well before Maytex adopted its accused EZ-UP trademark on shower curtains.

50.     Plaintiffs' use of the EZ ON® trademark on shower curtains commenced well before Maytex adopted its accused EZ-UP trademark on shower curtains.

51.     Maytex's use of the EZ-UP mark, and its use of Plaintiffs' trade dress, for the same type of goods, is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Maytex with Plaintiffs, or as to the origin, sponsorship, or approval of Maytex's goods by Plaintiffs.

52.     The "EZ-UP" mark infringes Plaintiffs' EZ ON® trademark.

9

53.     Both Defendant's use of Plaintiffs' trade dress, and its use of the EZ-UP mark, for the same type of goods, are individually, and collectively, intended, and likely to cause confusion, to cause mistake, and/or to deceive as to the affiliation, connection, or association of Defendant with Plaintiffs, or as to the origin, sponsorship, or approval of Defendant's goods by Plaintiffs.

54.     Defendant's use of Plaintiffs' marks and trade dress, or marks and products confusingly similar therewith, are deliberate.

55.     Defendant uses a mark and products that copy, imitate, or mimic, Plaintiffs' mark, trade dress, and products, and are intended to do so.

56.     Defendant's uses constitute unfair competition.

57.     Defendant's uses constitute willful infringement.

58.     The overall appearance of the design of Plaintiffs' shower curtains is protectable, distinctive, non-functional trade dress.

59.     Plaintiffs' trade dress rights are rights to the characteristics of the visual appearance of Plaintiffs' shower curtain products.

60.     Plaintiffs' trade dress rights likewise have also accrued via sales of Plaintiffs' brand shower curtains, which incorporates Plaintiffs' trade dress.

61.     Plaintiffs' trade dress rights include rights to the visual appearance of their shower curtain products, which provide the visual appearance of:

        a.   a shower curtain wherein the curtain lacks any hooks protruding above the upper edge of the curtain, so that Plaintiffs' shower curtain

provides the visual appearance of an essentially "neat" and "orderly" upper edge;

b.  and wherein the shower curtain has a row of rings along the upper portion of the shower curtain, those rings being attached to the material of the shower curtain such that the bottom surface of each ring (on one or both sides of the shower curtain) is essentially co-planar with the material of the shower curtain, also providing an essentially "neat" and "orderly" appearance;

c.  wherein each ring includes a slit or gap in the ring;

d.  and wherein the shower curtain's rings or pairs of rings, and the associated slits or gaps, are each fixed in place on the shower curtain and provide an organized and symmetrical repeating visual pattern along the top width of the shower curtain.

62.  The combination and arrangement of the design elements set forth above constitute the trade dress owned by Plaintiffs.

63.  Examples of products bearing Plaintiffs' trade dress are attached as Exhibit 9.

64.  A comparison of Plaintiffs' retail products, embodying their trade dress, to Maytex's Accused Products, is attached as Exhibit 10.

65.  Plaintiffs have extensively and exclusively sold numerous shower curtain products throughout the United States over the years, from 1997 to the present,

incorporating Plaintiffs' trade dress listed above, with such products having been sold either directly by Plaintiffs and/or through licensees.

66.     Plaintiffs' trade dress provides a more symmetrical and neat overall appearance for their shower curtains, as compared to traditional shower curtains having hooks.

67.     Plaintiffs' trade dress is not essential to the use or purpose of a shower curtain.

68.     Numerous alternative constructions perform the same shower curtain function as Plaintiffs' trade dress.

69.     Traditional shower curtains having hooks have long fulfilled the function of a shower curtain, but are not within the scope of Plaintiffs' trade dress.

70.     Plaintiffs' trade dress is not necessary to achieve the function of a shower curtain, but rather provides an aesthetic appearance designed by Plaintiff ZDG.

71.     Plaintiffs' trade dress is non-functional.

72.     Plaintiffs have created their designs, including their trade dress, and have extensively marketed, promoted, and sold their products, including their associated trademarks and trade dress, through extensive time, labor, skill, and money.

73.     As a result thereof, Plaintiffs' products have been extensively sold throughout the United States, and have become an extremely popular shower curtain design, including, the leading shower curtain in the hospitality market.

74.     In addition to being distinctive, Plaintiffs' trade dress has acquired secondary meaning, and is recognized as identifying Plaintiffs' high-quality products.

75.     Over more than twenty-four years, Plaintiffs, directly or through their licensee(s) and/or predecessors, have expended at least hundreds of thousands, or millions of dollars in advertising their products and their associated trade dress, including, but not limited to, marketing and advertising their products at trade shows throughout the country, extensive marketing on QVC, internet marketing on YouTube, and so forth.

76.     Buyers, including, but not limited to, buyers in the hospitality industry, widely recognize Plaintiffs' trade dress as originating with Plaintiffs, with such trade dress being associated by them with Plaintiffs.

77.     A recent survey has also shown high brand awareness of Plaintiffs' Hookless® product and mark, showing unaided brand awareness of 25%, and aided brand awareness of 58%.

78.     Plaintiffs' trade dress has also been the subject of repeated unsolicited media coverage.  Such coverage has included laudatory articles in numerous magazines and periodicals, including, but not limited to, New York magazine, Woman's Day magazine, and the New York Times.  It has also been featured repeatedly on television on QVC.

79.     Plaintiffs' trademarks and trade dress has also been the subject of industry awards, including, for example, awards on QVC for Best New Product, and awards at trade shows.

80.     Plaintiffs' trade dress has also been the subject of immense sales success. Plaintiffs' shower curtain products bearing their trade dress were originally a new,

13

unknown, product in the late nineties. From there, they have shot up to their current status as the number 1 shower curtain in the hospitality industry (e.g., hotels and motels) throughout the U.S.

81.    Plaintiffs have had sales of many millions of dollars in shower curtain products bearing Plaintiffs' trade dress.

82.    As of 2005, Plaintiffs' products bearing their trade dress had already been installed in over one million hotel bathrooms. As some examples, the trade dress has been adopted by Amerisuites, Baymont, Clarion, Comfort Suites, Crossland, Days Inn, Drury Inns, Extended Stay America, Hampton Inn & Suites, Holiday Inn Express, Holiday Inn Select, Homestead Village, Homewood Suites, La Quinta, Motel 6, Prime Hotels, Quality Inn, Ramada, Red Roof Inns, Studio Plus, Sunsuites, Super 8, Wellesley Inns and Wingate.

83.    Plaintiffs' trade dress has also been the subject of numerous attempts by third parties to plagiarize Plaintiffs' trade dress.

84.    However, Plaintiffs have consistently and successfully enforced their rights against third parties, and continue to do so. Plaintiffs have enforced their rights via litigation asserting their patent rights, which have excluded others from commercializing products that appear like Plaintiffs' trade dress, and via cease-and-desist letters.

85.    The activities of Defendant that are accused in the present suit, are the latest example of plagiarism, in addition to the numerous past instances.

86.     Plaintiffs, whether directly or through licensees and/or predecessors-in-interest, have for a period of over twenty-four years, continuously, exclusively, and extensively, used their trade dress in interstate commerce throughout the United States.

87.     Plaintiffs' trademarks, trade dress, and associated intellectual property and goodwill directed to its shower curtain products, are valuable assets of Plaintiffs.

88.     Defendant's shower curtain products infringe Plaintiffs' trade dress rights.

89.     As noted above, examples of comparisons of Defendant's products to Plaintiffs' products are attached as Exhibit 10.

90.     Based on the relevant facts, including, for example, the strong trademark rights that Plaintiffs have accrued from their extensive and extremely successful use of their marks in commerce (including their trade dress and registered mark), the high degree of similarity between the Plaintiffs' trademarks and Defendant's infringing marks, the lack of a gap between Plaintiffs' and Defendant's products, information and belief as to actual confusion, Defendant's bad faith in adopting the accused marks, and the nature of the products and purchasers, there is a likelihood of confusion between Plaintiffs' EZ ON® mark, and Plaintiffs' trade dress, and Defendant's accused infringements.

91.     Defendant's products were introduced to trade off of the good will, secondary meaning, and success that Plaintiffs had accrued in Plaintiffs' trade dress, trademarks, products, and in the marketplace.

92.     Defendant uses Plaintiffs' mark and trade dress to confuse and mislead customers into believing that their goods originate from, are sponsored by, or are affiliated with Plaintiffs, and that use poses a likelihood of confusing customers into

believing that Defendant's goods originate from, are sponsored by, or are affiliated with Plaintiffs.

## WILLFUL INFRINGEMENT

93.     Defendant's activities have been and are deliberate and willful.

94.     Defendant is aware of Plaintiffs' inventions and trademarks, including, Plaintiffs' designs and trade dress, and has deliberately chosen to use, sell, and offer for sale, products and use marks and dress, intended to copy, or imitate, the same.

95.     Defendant was aware of Plaintiffs' inventions and trademarks before introducing its accused products into commerce and when continuing to sell its accused products, including awareness of Plaintiffs' designs and trade dress, but has deliberately chosen to use, sell, and offer for sale, products and use marks and dress, intended to copy, or imitate, the same.

96.     Defendant Maytex is Home Depot's supplier of the accused products, among other retailers.

97.     Maytex's infringing conduct was willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, and flagrant, with Maytex having engaged in egregious misconduct.

98.     Maytex acted with knowledge of Plaintiffs' asserted patents and trademark rights in suit, and was in reckless disregard of an objectively high risk that it was infringing Plaintiffs' patent and trademark rights.

99.     When Maytex engaged in the activities accused herein, it did so despite an objectively high likelihood that its actions constituted infringement of valid patent and trademark rights.

100.     In the alternative, Maytex has engaged in willful blindness regarding Plaintiffs' patent and trademark rights, and regarding its accused products' infringement of Plaintiffs' design patents and trademark rights, and has recklessly chosen to continue to make, sell, offer for sale, use and/or import the accused products.

101.     Maytex chose to infringe Plaintiffs' patents and trademark rights despite an objectively high likelihood that its actions constituted infringement of valid patents and trademark rights, with this objectively-defined risk being either known, or so obvious that it should have been known, to Maytex.

102.     Maytex's actions constitute willful infringement under the legal standards applicable thereto.  Such standards include the standards for willfulness, and for enhanced damages under 35 U.S.C. §284.

103.     Maytex's willful infringement is ongoing.

104.     Defendant, in bad faith, adopted Plaintiffs' inventions and marks, including Plaintiffs' designs and trade dress.

105.     Defendant's acts have been without license or authority of Plaintiffs.

106.     Defendant's bad faith activities have caused and will continue to cause a likelihood of deception and confusion in the marketplace among consumers, and extensive damage to Plaintiffs and their business, goodwill, and reputation.

107.    Defendant has illegally profited, and are illegally profiting, from their infringements of Plaintiffs' rights.

108.    Defendant's acts have been without license or authority of Plaintiffs.

109.    Defendant's actions have caused and are causing irreparable harm to Plaintiffs.

110.    Plaintiffs have been damaged by Defendant's activities and will continue to be damaged unless Defendant is restrained and enjoined by this Court.

111.    Plaintiffs have no adequate remedy at law.

112.    Plaintiffs have been damaged by Defendant's illegal actions in an amount to be determined by a jury and this Court, including recovery and relief for Plaintiffs' lost sales, lost profits, price erosion, and damage to Plaintiffs' reputation and good will, and/or a disgorgement of Defendant's revenues and profits.

**COUNT I**
**PATENT INFRINGEMENT**
**35 U.S.C. §101 *et seq.***

113.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

114.    This claim arises under 35 U.S.C. §101 *et seq.*

115.    This Court has jurisdiction over this claim pursuant to 28 U.S.C. §1331.

116.    Defendant's acts constitute infringement of the '091 Design Patent, under 35 U.S.C. §271.

117.    Defendant is directly infringing literally and/or under the doctrine of equivalents.

18

118.    Upon information and belief, Defendant's acts of infringement were and are willful and deliberate.

119.    Defendant is profiting from its infringing activities, and is subject to disgorgement of its profits and/or revenues from its infringements.

120.    As a result of Defendant's conduct, Plaintiffs are being substantially harmed, and are suffering actual damages, including lost profits, and have been forced to retain legal counsel and pay costs of court to bring this action.

## COUNT II
## PATENT INFRINGEMENT
## 35 U.S.C. §101 *et seq.*

121.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

122.    This claim arises under 35 U.S.C. §101 *et seq.*

123.    This Court has jurisdiction over this claim pursuant to 28 U.S.C. §1331.

124.    Defendant's acts constitute infringement of the '607 Design Patent, under 35 U.S.C. §271.

125.    Defendant is directly infringing literally and/or under the doctrine of equivalents.

126.    Upon information and belief, Defendant's acts of infringement were and are willful and deliberate.

127.    Defendant is profiting from its infringing activities, and is subject to disgorgement of its profits and/or revenues from its infringements.

128.     As a result of Defendant's conduct, Plaintiffs are being substantially harmed, and are suffering actual damages, including lost profits, and have been forced to retain legal counsel and pay costs of court to bring this action.

### COUNT III
### LANHAM ACT TRADEMARK INFRINGEMENT
### AND UNFAIR COMPETITION
### 15 U.S.C. §1125(a)

129.     Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs, as if fully set forth herein.

130.     This claim arises under the Lanham Act, 15 U.S.C. §1051 et seq.

131.     This Court has jurisdiction over this claim pursuant to 28 U.S.C. §1331.

132.     Defendant is intentionally using a trademark which is confusingly similar to Plaintiffs' trademark EZ ON® directed to shower curtain products, in a manner that has caused, and is likely to cause, confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiffs, or as to the origin, sponsorship, or approval of Defendant's goods by Plaintiffs.

133.     Defendant is intentionally using trade dress which is confusingly similar to Plaintiffs' trade dress in its shower curtains in a manner that has caused and is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiffs, or as to the origin, sponsorship, or approval of Defendant's goods by Plaintiffs.

134.     Defendant's sale and offer for sale of products with a mark and trade dress which is confusingly similar to Plaintiffs' trademark and dress, constitutes unfair

competition, false designation of origin, and false description and representations, and

false advertising, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

135.    Defendant's acts of infringement were and are willful and deliberate.

136.    Defendant has profited from its illegal and bad faith activities.

137.    Plaintiffs have suffered, and continue to suffer, substantial damages as a

result of Defendant Maytex's bad faith activities, in an amount to be determined by the

jury and this Court.

## COUNT IV
## NEW YORK COMMON LAW OF UNFAIR COMPETITION

138.    Plaintiffs repeat and re-allege each and every allegation contained in the

preceding paragraphs, as if fully set forth herein.

139.    This claim arises under the common law of the State of New York.  *See*

*e.g., Luv n' care, Ltd. v. Walgreen Co*., 695 F. Supp. 2d 125, 135 (S.D.N.Y. 2010).

140.    This Court has jurisdiction over this claim pursuant to 28 U.S.C. §1367.

141.    Plaintiffs have created their marks and designs, including their trade dress,

and have extensively marketed, promoted, and sold their products, including their

associated designs, trademarks, and trade dress, through extensive time, labor, skill, and

money.

142.    Defendant has engaged in unfair competition under New York common

law by Defendant's bad faith misappropriation of the labors and expenditures of

Plaintiffs, which is likely to cause confusion or to deceive purchasers as to the origin of

Defendant's goods.

21

143.   Defendant has misappropriated business value of Plaintiffs, and has misappropriated the results of Plaintiffs' labor and skill and the expenditures of Plaintiffs, by marketing and selling goods that are confusingly similar to the designs and marks of Plaintiffs' goods, including Plaintiffs' trade dress in those goods.

144.   Defendant has used marks, designs, and trade dress that are confusingly similar to that of the Plaintiffs, for the same type of goods, and has done so in bad faith.

145.   Defendant has used those marks, designs, and trade dress, in competition with Plaintiffs, gaining an unfair advantage, because Defendant bore little or no burden of expense of Plaintiffs' creation, development, marketing, and promotion of those marks, designs, trade dress, and goods.

146.   Defendant has engaged in bad faith misappropriation of the labors of Plaintiffs in Plaintiffs' creating, marketing, promoting, and selling of their products bearing their marks, designs, and trade dress, which misappropriation is likely to cause confusion, to deceive purchasers as to the origin of the goods, and to dilute the value of Plaintiffs' marks, designs and trade dress and the value of Plaintiffs' products bearing the same.

147.   Defendant's bad faith activities are intended to copy or mimic the trademarks and trade dress associated with Plaintiffs' brand, and to copy and mimic the same.

148.   Defendant's actions have caused significant commercial damage to Plaintiffs.

149.     Defendant's conduct is illegal and actionable under the common law of unfair competition of the State of New York.

150.     Plaintiffs have been injured by Defendant's illegal actions and are entitled to the remedies provided under New York law.

## DAMAGES

151.     Plaintiffs are being irreparably harmed by Defendant's infringing activities, and have no adequate remedy at law.

152.     Plaintiffs have been extensively damaged by Defendant's intellectual property infringement in an amount to be determined by a jury and this Court.

153.     Plaintiffs seek damages as a result of Defendant's infringement which include, but are not limited to:  Plaintiffs' lost sales, lost profits, price erosion, and damage to their reputation and good will; and/or disgorgement of Defendant's revenues and profits; from Defendant's sales of infringing products, associated parts thereof, and from all other sales recoverable by law, such as convoyed, derivative, or collateral sales.

154.     Plaintiffs request that this honorable Court assess enhanced damages against Defendant in the fullest amount permissible by law, including, but not limited to, treble damages under federal law and punitive damages under New York law, in view of the willful, egregious, malicious, and extensive nature of Defendant's bad faith activities complained of herein, and in view of the numerous violations, the willful nature of the violations, and the significant damage to Plaintiffs, as set forth above.

155.    Plaintiffs request preliminary and permanent injunctive relief to bar further acts infringing Plaintiffs' rights under federal and/or New York law, absent which the willful violations complained of herein will all continue.

## JURY TRIAL DEMAND

156.    Pursuant to Rule 38, Fed. R. Civ. P. Plaintiffs hereby demand a trial by jury on all issues set forth herein that are properly triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court, upon final hearing of this matter, grant the following relief against Defendant:

A.    That Defendant be adjudged to have engaged in patent infringement of Plaintiffs' rights under United States Design Patent No. D668,091 ("the '091 Patent") under 35 U.S.C. §101 *et seq*.;

B.    That Defendant be adjudged to have engaged in patent infringement of Plaintiffs' rights under United States Design Patent No. D937,607 ("the '607 Patent") under 35 U.S.C. §101 *et seq*.;

C.    That Defendant be adjudged to have engaged in federal unfair competition and trademark infringement under Section 43 of the Lanham Act, 15 U.S.C. §1125.

D.    That Defendant be adjudged to have engaged in unfair competition under the common law of the State of New York.

E.    That the '091 and the '607 patents were duly and legally issued by the U.S. Patent Office, and are valid and enforceable;

F.    That each of Defendant, its officers, agents, servants, employees, representatives, distributors and all persons in concert or participation with Defendant be enjoined pursuant to 35 U.S.C. §283 from engaging in any activities which infringe Plaintiffs' rights in Plaintiffs' design patents under 35 U.S.C. §271;

G.    That each of Defendant, its officers, agents, servants, employees, representatives, distributors, and all persons in concert or participation with them be enjoined pursuant to 35 U.S.C. §283 from making, using, importing, exporting, offering for sale, and selling any products and activities which directly infringe Plaintiffs' design patents under 35 U.S.C. §271;

H.    That each of Defendant, its officers, agents, servants, employees, representatives, distributors, and all persons in concert or participation with Defendant be preliminarily and permanently enjoined from offering for sale, selling or marketing merchandise that copies or imitates any of Plaintiffs' trademark rights, including Plaintiffs' trade dress, be preliminarily and permanently enjoined from offering for sale, selling or marketing merchandise that tends in any way to deceive, mislead or confuse the public into believing that Defendant's merchandise in any way originates with, is sanctioned by, or is affiliated with Plaintiffs; and be preliminarily and permanently enjoined from engaging in any activities violating Plaintiffs' rights under Section 43(a) of the Lanham Act, 15

U.S.C. §1125(a), and the common law of the State of New York;

I.      That each of Defendant, its officers, agents, servants, employees, representatives, distributors, and all persons in concert or participation with Defendant be preliminarily and permanently enjoined from otherwise competing unfairly with Plaintiffs;

J.      That each of Defendant, its officers, agents, servants, employees, representatives, distributors, and all persons in concert or participation with Defendant be preliminarily and permanently enjoined from engaging in any and all further deceptive and unfair business practices with respect to Plaintiffs;

K.      That each of Defendant, its officers, agents, servants, employees, representatives, distributors, and all persons in concert or participation with Defendant be preliminarily and permanently enjoined from engaging in further acts infringing Plaintiffs' rights under federal and/or N.Y. law;

L.      That Defendant be directed to file with this Court and serve on Plaintiffs within thirty (30) days after service of the injunction, a report in writing, under oath, setting forth in detail the manner and form in which the Defendant has complied with the injunction;

M.      That Defendant be required to account for and pay over to Plaintiffs any and all revenues and profits derived by it and all damages sustained by Plaintiffs by reason of the acts complained of in this FAC, including an assessment of interest on the damages so computed, and that the damages

be trebled, pursuant to 35 U.S.C. §§284 and 289, and 15 U.S.C. §1117 and all further applicable law;

N.     That Defendant be required to account for and pay over to Plaintiffs such actual damages as Plaintiffs have sustained as a consequence of Defendant's infringement; that the damages relating to patent infringement be trebled pursuant to 35 U.S.C. §284, that the damages relating to trademark and trade dress infringement be trebled pursuant to 15 U.S.C. §1117, and that any and all damages likewise be enhanced to the maximum available under all applicable federal and New York law; and that Defendant be required to account for and pay to Plaintiffs all of Defendant's gains, revenues, profits and advantages attributable to or derived by Defendant's infringement;

O.     That each such award of damages be enhanced to the maximum available for each infringement in view of Defendant's willful infringement of Plaintiffs' rights;

P.     That Defendant be required to deliver up for impoundment during the pendency of this action, and for destruction thereafter, all copies of the infringing materials in its possession or under its control and all materials, including molds and master models, used for making same;

Q.     That Plaintiffs be awarded punitive or exemplary damages under New York law because of the egregious, malicious, and tortious conduct of Defendant complained of herein;

R.     That Plaintiffs recover the costs of this action including their expenses and reasonable attorney's fees pursuant to 35 U.S.C. §285 and 15 U.S.C. §1117 and all further applicable law, because of the deliberate and willful nature of the infringing activities of Defendant sought to be enjoined hereby, which make this an exceptional case warranting such award;

S.     That Plaintiffs be awarded pre-judgment and post-judgment interest;

T.     That Plaintiffs obtain all further relief permitted under the laws of the United States and the State of New York; and,

U.     That Plaintiffs obtain all such other and further relief as the Court may deem just and equitable.

Dated: February 1, 2022

*/s/Morris E. Cohen*
Morris E. Cohen (MC-4620)
Lee A. Goldberg (LG-9423)
Limor Wigder (LW-1986)
GOLDBERG COHEN LLP
1350 Avenue of the Americas, 3rd Floor
New York, New York 10019
(646) 380-2087 (phone)
(646) 514-2123 (fax)
MCohen@GoldbergCohen.com
LGoldberg@GoldbergCohen.com
LWigder@GoldbergCohen.com

Donald L. Rhoads
Rhoads Legal Group PC
100 Park Avenue, Suite 1600
New York, NY 10017
(212) 390-8510 (phone)
drhoads@rhoadslegal.com

Attorneys for Plaintiffs

28

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2022, a true and correct copy of the foregoing document was served via the Court's ECF system on counsel of record in this action.

Dated: February 1, 2022              */s/Morris E. Cohen*_____
                                     Morris E. Cohen

29