UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                      :

SURE FIT HOME PRODUCTS, LLC, et al.,    :
                         Plaintiffs,   :

                                       :          21 Civ. 2169 (LGS)

             -against-          :

                                       :      **OPINION AND ORDER**

MAYTEX MILLS, INC.,                  :
                         Defendant.  :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

     In this consolidated action, Plaintiffs Sure Fit Home Products, LLC, SF Home Décor, LLC (collectively, "Sure Fit"), Zahner Design Group, Ltd. ("ZDG"), and Hookless Systems of North America, Inc. ("HSNA") (collectively, "Plaintiffs") claim that Defendant Maytex Mills, Inc.'s shower curtains infringe their recently obtained design patent. Plaintiffs seek a preliminary injunction to enjoin Defendant from its alleged infringement. For the reasons set forth below, the motion is denied.

## I.    BACKGROUND

### A.    Patent History

     The subject of this motion is Design Patent No. D937,607 (the "D607 Patent"), which the United States Patent and Trademark Office ("USPTO") issued on December 7, 2021. The patent claims an "ornamental design for a shower curtain," as depicted in Figure 1 below. The D607 Patent followed issuance of several utility patents and one design patent, which is also the subject of this consolidated action.



D607 Patent Figure 1

On February 16, 1993, the USPTO issued Utility Patent Number 5,186,232, entitled "Accessory" (the "'232 Patent"). The '232 Patent claimed a sheet of material, such as a shower curtain, that could be installed on a rod while the rod was fixed in place. The '232 Patent accomplished this by placing pairs of holes near the edge of the sheet, with a horizontal slit between holes. Those slits allowed the rod to be passed through the holes without removing the rod from its mount. Each opening was surrounded by a reinforcing ring to (1) prevent tearing of the sheet and (2) improve movement of the sheet on the rod and improve the engagement of the holes with the rod. This invention is depicted below.



'232 Patent Figures 1 and 3

On December 17, 2002, the USPTO issued Utility Patent Number 6,494,248, entitled "Suspended Materials Having External Slits" (the "'248 Patent"). The '248 Patent incorporated the invention of the '232 Patent but improved upon that patent by relocating the slits so that they ran from the edge of the holes to the edge of the sheet material, as depicted below.

2



'248 Patent Figure 6

As with the '232 Patent, this design allowed the sheet to be mounted without moving the rod. The '232 Patent expired on July 17, 2020.

On October 2, 2012, the USPTO issued Design Patent No. 668,091 (the "D091 Patent"). That patent, which expires in 2026, claims a shower curtain with reinforcing rings containing a slit. As discussed in more detail in Section II.B, that patent was the subject of the original complaint in this action.

### B.   Procedural History

On March 12, 2021, Plaintiffs initiated this action, asserting infringement of the D091 Patent and Plaintiffs' EZ ON trademark, and asserting unfair competition. The same day, Plaintiffs filed a motion seeking preliminary injunctive relief due to infringement of the D091 Patent and asserted trade dress. The motion was denied, and the denial was affirmed. *Sure Fit Home Prods., LLC v. Maytex Mills, Inc.*, No. 21 Civ. 2169, 2021 WL 2134863, at *1 (S.D.N.Y. May 26, 2021), *aff'd,* No. 2021-2048, 2022 WL 1073209 (Fed. Cir. Apr. 11, 2022).

On January 7, 2022, following the recent issuance of the D607 Patent, Plaintiffs initiated a separate action against Defendant and filed a Related Case Statement stating that the newly filed action should be treated as related to this case. On January 14, 2022, the cases were

consolidated, and Plaintiffs were directed to file a consolidated amended complaint.  On

February 1, 2022, Plaintiffs filed the First Amended Complaint in this consolidated action,

asserting, among other things, infringement of the D607 Patent by Defendant's "EZ UP" shower

curtain, "Glacier Bay" and "Insta-Curtain" products (the "Accused Products").  Plaintiffs then

renewed their motion for preliminary injunction based on infringement of the D607 Patent.

## II.   STANDARD

Federal Circuit law governs whether a patentee has shown a likelihood of success on the

merits.  *BlephEx, LLC v. Myco Indus., Inc.*, 24 F.4th 1391, 1400 (Fed. Cir. 2022).[1]  A party

seeking the "extraordinary relief" of a preliminary injunction must "establish [1] that he is likely

to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of

preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in

the public interest."  *Takeda Pharms. U.S.A., Inc. v. Mylan Pharms. Inc.*, 967 F.3d 1339, 1345,

1349 (Fed. Cir. 2020) (alterations in original, internal quotation marks omitted).  "[A] movant

cannot be granted a preliminary injunction unless it establishes both of the first two factors, *i.e.*,

likelihood of success on the merits and irreparable harm."  *PHG Techs., LLC v. St. John Co., Inc.*,

469 F.3d 1361, 1365 (Fed. Cir. 2006) (internal quotation marks omitted); *accord The*

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 676 F. App'x 980, 984 (Fed. Cir. 2017).

To show likelihood of success, a patentee seeking a preliminary injunction must show it

is more likely than not that it will prove infringement and withstand any challenges to the

---

[1] Although the Federal Circuit generally "review[s] the grant or denial of a preliminary
injunction using the law of the regional circuit . . . the Federal Circuit has itself built a body of
precedent applying the general preliminary injunction considerations to a large number of
factually variant patent cases, and gives dominant effect to Federal Circuit precedent insofar as it
reflects considerations specific to patent issues."  *Metalcraft of Mayville, Inc. v. The Toro Co.*,
848 F.3d 1358, 1363 (Fed. Cir. 2017) (internal quotation marks and citations omitted).

validity of the patent. *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1202 (Fed. Cir. 2017). An accused infringer can defeat this showing of likelihood of success by demonstrating a substantial question of infringement or validity. *Id.* "[T]he burden on the accused infringer to show a substantial question of invalidity at [the preliminary injunction] stage is lower than [the clear and convincing showing] required to prove invalidity at trial." *BlephEx, LLC*, 24 F.4th at 1399, 1403 (internal quotation marks omitted). "[I]f the accused infringer presents a substantial question of validity, i.e., asserts an invalidity defense that the patentee cannot prove lacks substantial merit, the preliminary injunction should not issue." *Id*. at 1399 (internal quotation marks omitted). "[T]he ultimate burden is on [the patentee] to show that it is likely to succeed on the merits to obtain the extraordinary remedy of a preliminary injunction, including on the validity issue." *Id*. (internal quotation marks omitted).

III. **DISCUSSION**

A. **Preliminary Claim Construction**

A district court is not required to make "a comprehensive and final claim construction in a preliminary injunction proceeding" but must conduct at least a preliminary or abbreviated claim construction to the extent necessary to determine a movant's likelihood of success on the merits. *Shuffle Master, Inc. v. VendingData Corp.*, 163 F. App'x 864, 867-68 (Fed. Cir. 2005).

"[A] district court's duty at the claim construction stage is . . . to resolve a dispute about claim scope that has been raised by the parties." *Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1319 (Fed. Cir. 2016). "[D]esign patents typically are claimed as shown in drawings." *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1342 (Fed. Cir. 2020) (internal quotation marks omitted); *accord Curver Lux., SARL v. Home Expressions Inc*., 938 F.3d 1334, 1339 (Fed. Cir. 2019) ("[t]o define the scope of a design patent, we have traditionally

focused on the figures illustrated in the patent") (collecting cases).  The Federal Circuit has

instructed that a district court construing design patent claims should "distinguish between those

features of the claimed design that are ornamental and those that are purely functional." *Lanard*

*Toys*, 958 F.3d at 1342 (internal quotation marks and alterations omitted).  "[A] design patent is

invalid if its overall appearance is dictated by its function.  But as long as the design is not

primarily functional, the design claim is not invalid, even if certain elements have functional

purposes.  That is because a design patent's claim protects an article of manufacture, which

'necessarily serves a utilitarian purpose.'" *Sport Dimension, Inc. v. Coleman Co*., 820 F.3d 1316,

1320 (Fed. Cir. 2016) (internal quotations and citations omitted).  So, where a design contains

functional and non-functional elements, the "scope of the claim must be construed in order to

identify the non-functional aspects of the design as shown in the patent." *Id.* (internal quotation

marks omitted).  A design patent's claim protects the ornamental, but not the functional, aspects

of the design.  *Id*. at 1321.

The D607 Patent contains only one figure that is directed to the front view of the shower

curtain.  Plaintiffs contend that "the patent is to a claimed design of a shower curtain having at

least six circular rings along the upper portion of the shower curtain, each ring having a vertical

slit that extends through the top of the shower curtain and the rings."  Defendant asserts that

"each ring . . . is flat with sharp edges and a single vertical line extending upward at the 12

o'clock position through the top of each ring and through the top edge of the curtain sheet."

These two competing proposed constructions reflect two primary areas of dispute.  One concerns

the "slit" or "line" at the top of the shower curtain.  The second dispute concerns whether there is

any limitation on the contours of the rings, such as "flat with sharp edges," as Defendant

suggests.  As neither issue affects the analysis below on Plaintiffs' likelihood of success on the merits, these disputes are not resolved at this preliminary stage.

The Court preliminary adopts Plaintiffs' proposed construction for the purpose of this motion because, even construing the D607 Patent as Plaintiffs suggest, Plaintiffs have not sustained their burden of showing a likelihood of success on the merits.  Specifically, the Court preliminarily finds that the D607 Patent claims a design for a shower curtain shown in the single figure below.  The shower curtain has at least six circular rings along the upper portion of the shower curtain, each ring having a vertical slit that extends through the top of the shower curtain and the rings.  The vertical slit has both design and functional elements, for the same reasons discussed in the claim construction of the D091 Patent.  *See Sure Fit Home Prods., LLC v. Maytex Mills, Inc.*, No. 21 Civ. 2169, 2021 WL 4790580, at *3 (S.D.N.Y. Oct. 14., 2021).



## B.    Likelihood of Success

Plaintiffs' motion is denied because Defendant has shown a substantial question about the validity of the D607 Patent on obviousness grounds.

Defendant has shown a substantial question of validity on the grounds that the D607 Patent is obvious over the '232 Patent.  A granted patent is presumed valid.  *Nature Simulation Sys. Inc. v. Autodesk, Inc.*, 23 F.4th 1334, 1337 (Fed. Cir. 2022).  However, a patent may not issue "if the differences between the claimed invention and the prior art are such that the claimed

invention as a whole would have been obvious before the effective filing date of the claimed

invention to a person having ordinary skill in the art to which the claimed invention pertains."

35 U.S.C. § 103.  An "obviousness inquiry requires consideration of the four *Graham* factors: (1)

the scope and content of the prior art; (2) the differences between the claims and the prior art; (3)

the level of ordinary skill in the art; and (4) objective indicia of nonobviousness, such as

commercial success, long felt but unsolved needs, and failure of others."  *Campbell Soup Co. v.*

*Gamon Plus, Inc.*, 10 F.4th 1268, 1275 (Fed. Cir. 2021) (citing *Graham v. John Deere Co.*, 383

U.S. 1, 17-18 (1966)).

To address the first three *Graham* factors for a design patent, a court must "determin[e]

whether a designer of ordinary skill would have combined teachings of the prior art to create 'the

same overall visual appearance as the claimed design.'"  *Id.* (quoting *Durling v. Spectrum*

*Furniture Co*., 101 F.3d 100, 103 (Fed. Cir. 1996)).  First, the trier of fact "must determine

whether there exists a primary reference, i.e., a single reference that creates basically the same

visual impression as the claimed design."  *Id.* (internal quotation marks omitted).  "To be

basically the same, the designs at issue cannot have substantial differences in their overall visual

appearances or require major modifications; any differences must instead be slight."  *Id.* (internal

quotation marks omitted).  In making this determination, the court focuses on the "distinctive

visual appearances of the reference and the claimed design," rather than the "general concept."

*Apple, Inc. v. Samsung Elecs Co., Ltd.*, 678 F.3d 1314, 1332 (Fed. Cir. 2012) (internal quotation

marks omitted).  "Second, if a primary reference exists, the trier of fact must determine whether,

using secondary references, an ordinary designer would have modified the primary reference to

create a design that has the same overall visual appearance as the claimed design."  *Campbell*

*Soup Co.*, 10 F.4th at 1275.  Alternatively, "[a] patent can be obvious in light of a single prior art

reference if it would have been obvious to modify that reference to arrive at the patented invention." *Game and Tech. Co., Ltd. v. Activision Blizzard Inc.*, 926 F.3d 1370, 1381 (Fed. Cir. 2019) (internal quotation marks omitted).

Here, Defendant argues, and Plaintiffs do not appear to dispute, that the '232 Patent serves as a primary reference.[2] The '232 Patent's design creates "basically the same visual impression" as the D607 Patent's design. Both designs show at least six, circular rings along the upper portion of the curtain. The spacing between the rings is similar, and although the rings of the D607 Patent may be slightly wider than the rings of the '232 Patent, any difference is slight. *Spigen Korea Co., Ltd. v. Ultraproof, Inc.*, 955 F.3d 1379, 1383 (Fed. Cir. 2020) ("[S]light differences in design, however, do not necessarily preclude a basically the same finding.") (internal quotation marks omitted). Both designs show slits that allow the curtain to be easily mounted on a rod without detaching the rod or using clips. The fact that the '232 Patent has horizontal slits whereas the D607 Patent has vertical slits is a slight difference, which is not even apparent in '232 Patent Figure 3 when viewing the material on a rod, as shown below. *See, e.g., Golden Eye Media USA, Inc. v. Evo Lifestyle Prod. Ltd.*, No. 2021-2096, 2022 WL 2232517, at *4 (Fed. Cir. June 22, 2022) ("the district court properly considered [a particular trolley bag] to be a primary reference [even though it had] a different handle design and location, horizontal rods that differ in length and design, and a less rectangular shape"); *MRC Innovations, Inc. v. Hunter Mfg., LLP*, 747 F.3d 1326, 1334-35 (Fed. Cir. 2014) (concluding that the district court did not err in using a particular pet jersey as a primary reference in spite of slight differences,

---

[2] In their reply, Plaintiffs state that the USPTO was aware of dozens of references relating to the D607 Patent, *including the '232 Patent*.

including that the patented design had a V-neck collar while the primary reference had a round

neck).





             D607 Patent Figure 1                                       '232 Patent Figures 1 and 3

       Defendant proposes four secondary references, two of which are sufficient to show

obviousness -- i.e., that, when viewed against the primary reference -- the '232 Patent -- they

would have motivated an ordinary designer to modify the '232 Patent to make the claimed

design of the D607 Patent.  Secondary references are those that are "so related to the [primary

reference] that the striking similarity in appearance across all [references] . . . would motivate a

skilled designer to combine the features from one with features of another" to make the claimed

design.  *MRC Innovations, Inc.*, 747 F.3d at 1334-35 (internal quotation marks omitted); *accord*

*Sealy Tech., LLC v. SSB Mfg. Co.*, 825 F. App'x 801, 807 (Fed. Cir. 2020).  "[I]n order for

secondary references to be considered, . . . there must be some suggestion in the prior art to

modify the basic design with features from the secondary references."  *MRC Innovations, Inc.*,

747 F.3d at 1334 (internal quotation marks omitted).  "[T]he test for obviousness is not whether

the features of a secondary reference may be bodily incorporated into the structure of the primary

reference."  *Facebook, Inc. v. Windy City Innovations, LLC*, 973 F.3d 1321, 1343 (Fed. Cir.

2020) (internal quotation marks omitted).

       U.S. Patent 1,490,667 (the "'667 Patent") may be considered a secondary reference.  The

'667 Patent claims, among other things, "[a] curtain heading comprising a strip or band of

flexible material[,] one longitudinal margin of which has a series of spaced broken rings inset therein, the breaks in the rings defining openings along one edge of the strip or band."  The overall visual appearance of the '667 Patent closely resembles the design of the '232 Patent and D607 Patent, including the broken rings at the top of the curtain heading.  The broken rings closely resemble the rings with horizontal slits in the '232 Patent design in their size and spacing. Plaintiffs argue that the '667 Patent should not be considered prior art because the rings are oval, with wide gaps, and because the '667 Patent figure resembles figures from a patent that the USPTO determined was separate and distinct from the D607 Patent.  The rings in Figure 1 of the '667 Patent do not appear to be oval and any difference in spacing between the rings is slight. Additionally, the USPTO's findings regarding a different patent are not binding in this action.



'667 Patent Figure 1

U.S. Patent 6,189,597 (the "'597 Patent") also serves as a secondary reference.[3]  The Abstract of the '597 Patent describes:

> A curtain with a hanger ring assembly for mounting onto a supporting rod[,]" which "includes a sheet material and a plurality of hanger units.  The sheet material has a plurality of hanger openings formed along a top edge, and a plurality of edge gap extending from the top edge to an upper portion of the respective hanger opening. . . . The design "not only enables the curtain to be directly mounted onto a supporting rod without

---

[3] Plaintiffs do not appear to dispute that the '597 Patent is, at least, a "reference[] relating to the '607 Patent."  Dkt. No. 172 at 6 n.29.  Defendant asserts, and Plaintiffs do not dispute, that the '597 Patent claims priority from U.S. Application Serial No. 09/418,172, which issued from an application filed October 13, 1999, and is therefore prima facie prior art under the version of 35 U.S.C. § 102(e) that preceded its amendment on March 16, 2013, the effective date of the Leahy-Smith America Invests Act ("AIA").  *See* Pub. L. No. 112-29.

the need of additional hook or clip members nor the need of taking down the rod, but also prevents any cuts between the hanger openings on the curtain.

The specification states that "each of the hangar rings has a ring slit [which is a] radial through cut from outer side to inner side of the hanger ring."  That the slits are diagonal rather than vertical is a slight difference, which is not discernible in the second figure below when viewing the curtain on the rod.  The width of the rings, spacing and distance to the top of the curtain closely resemble the '232 Patent and D607 Patent such that the visual appearances are the same as the D607 design.



12

'597 Patent Figures 2, 4 and 7

Plaintiffs counter that the '597 Patent is not prior art because it is one of Plaintiff ZDG's own designs and is assigned to ZDG, without citing any law in support of this contention. Because the D607 Patent claims priority from U.S. Application Serial No. 09/617,402, which was filed July 17, 2000, it is governed by the version of 35 U.S.C. § 102(e) that preceded its amendment on March 16, 2013, the effective date of the Leahy-Smith America Invests Act ("AIA").  *See* Pub. L. No. 112-29.  The pre-AIA version of Section 102(e) states that "[a] person shall be entitled to a patent unless . . . the invention was described in a patent granted on an application for patent *by another* filed in the United States before the invention [thereof] by the applicant for patent . . ." (emphasis added).  "The statute's reference to "by another" means that an application issued to the same inventive entity cannot qualify as § 102(e) prior art."  *Duncan Parking Techs., Inc. v. IPS Grp., Inc.*, 914 F.3d 1347, 1357 (Fed. Cir. 2019) (internal quotation marks omitted).  Section 103(c) "provides that § 102(e) prior art does not preclude patentability if the subject matter [of the prior art] and the claimed invention were, at the time the claimed invention was made, owned by the same person or subject to an obligation of assignment to the same person."  *Indus. Tech. Rsch. Inst. v. Pac. Biosciences of California, Inc.*, 640 F. App'x 871, 883 (Fed. Cir. 2016) (cleaned up).  However, "evidence of common ownership by assignment after the application filing date does not establish common ownership or an obligation to assign ownership *at the time of the invention*."  *Id.*  Here, the '597 Patent was assigned in 2002, after the priority date for the D607 Patent, so the '597 Patent can serve as prior art for the D607 Patent.

In sum, Plaintiffs have not shown a likelihood of success on the merits to warrant a preliminary injunction, in light of Defendant's raising a substantial question about the validity of the D607 Patent based on obviousness.  In particular, Defendant has raised a substantial question

as to whether the differences between the prior art and the D607 Patent are such that the D607 Patent's design would have been obvious to an ordinary designer.  The primary and secondary references create the same overall visual appearance as the D607 Patent.  The different locations and orientation of the slits or breaks in the rings and use of connecting tabs in prior art show a set of discrete, incremental steps that an ordinary designer would have taken to create the design of the D607 Patent.  The D607 Patent is a simplified design that requires no connecting tabs and employs vertical slits, as opposed to horizontal or diagonal slits with connecting tabs.  Plaintiffs have not sustained their burden of showing a likelihood of success of demonstrating the validity of the D607 Patent.

### C.  Irreparable Harm

A preliminary injunction is denied for the additional reason that Plaintiffs have not met their burden of showing irreparable harm.  A patentee seeking a preliminary injunction must demonstrate that irreparable injury is likely in the absence of an injunction.  *See New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 86 (2d Cir. 2020).  "Irreparable harm is injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages."  *Id.* (internal quotation marks omitted).  A patentee must also show "that a sufficiently strong causal nexus relates the alleged harm to the alleged infringement."  *Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1378 (Fed. Cir. 2020) (internal quotation marks omitted).

Plaintiffs claim they are irreparably harmed or likely to suffer irreparable harm on several grounds, none of which are persuasive or adequately supported.  The purported bases for irreparable harm, at bottom, are lost sales and loss of goodwill.  Lost sales, if they can be shown to be a consequence of the infringement of a valid patent, can be remedied with money damages.

*Automated Merch. Sys., Inc. v. Crane Co.*, 357 F. App'x 297, 301 (Fed. Cir. 2009) ("Lost sales (without more) are presumed to be compensable through damages, so they do not require injunctive relief."). Accordingly, "lost sales standing alone are insufficient to prove irreparable harm; if they were, irreparable harm would be found in every case involving a manufacturer/patentee, regardless of circumstances." *Id.* at 300-01 (internal quotation marks omitted). Loss of goodwill, including impact on brand reputation and relationships with customers, can constitute irreparable harm, but also must be shown to be the result of a defendant's infringement of a valid patent. *Bio-Rad Lab'ys*, 967 F.3d at 1378 (noting that there must be a "sufficiently strong causal nexus [that] relates the alleged harm to the alleged infringement.").

Plaintiffs' alleged future harms suffer from a common flaw, which is that they are proffered in a general and conclusory manner, with little to no evidentiary support. "[A] bare assertion of irreparable harm is never sufficient to prove such harm or justify the 'extraordinary remedy' of a preliminary injunction." *Takeda*, 967 F.3d at 1349; *see also Koninklijke Philips N.V. v. Thales DIS AIS USA LLC*, 39 F.4th 1377, 1379-80 (Fed. Cir. 2022) (noting that "[e]vidence of speculative harms . . . is insufficient to show a *likelihood* of irreparable harm" and affirming the district court's determination that movant's evidence of harm was conclusory); *Automated Merch. Sys.*, 357 F. App'x at 301 (noting that "lost market share must be proven (or at least substantiated with some evidence) in order for it to support entry of a preliminary injunction" and "the defection of a single distributor from the patentee's camp to the accused infringer's camp" was not sufficient to demonstrate irreparable harm).

The limited evidence Plaintiffs provide is insufficient to substantiate their claim of irreparable harm. For example, Plaintiffs argue that Defendant's sales under a private label at

Home Depot causes a loss of brand recognition and undermines Plaintiffs' goodwill.  Plaintiffs cannot base their claim of future irreparable harm on a business opportunity that they rejected, regardless of their reasons for doing so.  Plaintiffs assert in an employee declaration that "it is likely that customers will lump all these products together," and blame any issue with the Accused Products on Plaintiffs.  This supposition on its own is insufficient to establish a risk of irreparable harm based on brand recognition and loss of goodwill.  *See Takeda*, 967 F.3d at 1349-50.  Likewise, Plaintiffs argue they have lost market share because the Army Air Force Exchange Store ("AAFES") replaced Plaintiffs' products with Defendant's Accused Products.  Plaintiffs, who bear the burden of proof, provide no detail about when this occurred, the impact it had on their business, the broader market or any evidence showing that this decision can be attributed to Defendant's alleged infringement.  AAFES may have switched or reduced the number of its suppliers for any number of reasons, regardless of the style of shower curtains, particularly where Defendant had been a supplier to AAFES for twenty-five years, sometimes supplying between 85% to 100% of its bath products.

Plaintiffs argue that "the infringement is causing irreparable harm because there is direct competition between Plaintiffs and Defendant."  The Federal Circuit has recognized that a patentee often may suffer irreparable harm when two companies are in direct competition, *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed Cir. 2013), and that "[d]irect competition in the same market is certainly one factor suggesting strongly the potential for irreparable harm without enforcement of the right to exclude."  *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012).  While direct competition may weigh in favor of finding irreparable harm, this single factor is not dispositive, particularly here where the Plaintiffs have not shown a limited number of suppliers or that the relevant market of

16

shower curtains is a small or niche market.  *See Abbott Laboratories v. Andrx Pharm., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006) ("[W]e do not doubt that generic competition will impact [plaintiff's] sales . . ., but that alone does not establish that Abbott's harm will be irreparable."); *compare CardiAQ Valve Techs., Inc. v. Neovasc Inc.*, 708 F. App'x 654, 668 (Fed. Cir. 2017) (finding that the plaintiff's asserted harm of competition was insufficient to compel a finding of non-speculative, irreparable harm), *with Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1170 (Fed. Cir. 2014) (concluding that the district court erred in finding that the plaintiff had not shown irreparable harm if its direct competitor was able to sell an infringing product in a "tiny market with only three players" and plaintiff sold only about eight products per year the defendant had already sold or pre-sold seven products).  The record in this case does not support a finding of a likelihood of irreparable harm.

### D.   Balance of Equities and Public Interest

In balancing the equities, courts must "weigh the harm to the moving party if the injunction is not granted against the harm to the non-moving party if the injunction is granted." *Metalcraft of Mayville, Inc. v. The Toro Co.*, 848 F.3d 1358, 1369 (Fed. Cir. 2017).  Here, the equities tip in favor of Plaintiffs.  As competitors, both parties will lose some degree of business and goodwill depending on whether an injunction issues.  However, Plaintiffs identify their shower curtain line of products as central to their business, whereas Defendant concedes that the Accused Products constitute a small portion of its business and that it will suffer only slightly if an injunction were granted.

The public interest would not be served by an injunction.  Limiting consumer choice by enjoining sales of the Accused Products would be premature given the substantial question about the validity of the D607 Patent on obviousness grounds.

**IV.   CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction is denied.  The

Clerk of Court is respectfully directed to close the motion at Docket No. 161.

Dated:  August 23, 2022
          New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE